Jake Ramsey, Plaintiff-Appellant, v. Bernice P. Stege, Defendant-Appellee.

Gen. No. 48,032 & 48,059.

First District, Second Division.

April 18, 1961.

Louis G. Davidson, Kleinman, Schwarzbach & Preston, of Chicago (Perry M. Berke, of counsel) for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Charles M. Rush and John M. O'Connor, Jr., of counsel) for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

The plaintiff, a coal hiker, seeks to recover damages from the defendant, the lessee of certain premises located at 2822 Milwaukee Avenue in Chicago, for his personal injuries, which are alleged to have been due to the defendant's negligence in failing to provide him with a "reasonably safe place and conditions in which to do his work." The trial court directed a verdict for the defendant at the close of the plaintiff's case, and this appeal followed.

The plaintiff contends that the trial court erred in directing a verdict on the ground that the evidence elicited by the plaintiff's witnesses presented a question of fact for the jury as to the negligence of the defendant, proximate cause, and the due care of the plaintiff.

The accident occurred on February 19, 1957. The defendant Bernice Stege, held the property at that time under an assignment of a 99 year lease from the 3430 Diversey Corporation. No one other than herself managed the property during the period in which she held the lease. She employed no janitor. Mr. Kaminsky, the third floor tenant, stokered the boiler and would order coal when it was needed for the building and the defendant would pay the bill. The first floor of the building was occupied by a bridal shop and the second floor was occupied by another tenant, a Mr. Benn.

The defendant, through her tenant, ordered eight and a quarter tons of coal from the George Lill Coal

Company. The plaintiff and the driver of the coal truck arrived at the premises at 7:00 a.m. on the morning in question. The basement door was locked so the driver obtained the keys from Mr. Benn, the second floor tenant, and unlocked the door and the window to the coal bin. He then dumped the coal on Diversey Avenue, near the crosswalk in the rear of the building. This was the standard procedure for delivering coal to this building as the coal bin was inaccessible from the street. A coal hiker would then be used to run it in by his wheelbarrow and unload it down the chute through the window.

The window to the coal bin was down in a well, which was about seven feet deep. The well was covered with a 235 pound metal grate, $3\frac{1}{2}$ feet by 4 feet 11 inches. The grating served as a part of the walk that led to the back door of the first floor premises and also to the basement stairs to the right. It is set in a concrete platform that is about five inches above the level of the sidewalk. There is an extension at each end of the grate that rests in a concrete groove; the grooves on the east side are two inches and on the west side, two and one-half inches. Each of the four flanges or extensions that extend out into these grooves is 3 inches long, $1\frac{1}{2}$ inches wide and $\frac{1}{4}$ inch thick.

The concrete foundation is flush against the building. The building itself forms one side of the groove and if the outer edge of the grating is raised to a vertical position, the bottom flanges sitting in the grooves are right up against the building.

It was of course necessary to remove the grate in order to deliver the coal. The plaintiff said that he and the driver removed the grate by raising it against the wall, so that the bottom flanges were still in the grooves, however, the grate was then in an almost vertical position. The plaintiff said that he realized that it could fall because it was sitting up too straight,

96

so he asked the driver to help him fix it. The driver placed a seven foot board against the easterly part of the grate and the plaintiff then proceeded to hike the coal.

Throughout the morning, it was necessary for the plaintiff to go down to the basement to "trim" the coal, that is, to shovel the coal away from the window, and to place the boards in the bin so that the coal would not run over into the basement. By lunch time, the plaintiff had hiked about seven and a half tons of coal, and after lunch, it was necessary to trim the coal again. He went down into the basement and placed more boards in the bin and trimmed the coal away from the window. However, the coal was then up to the ceiling so that he couldn't leave through the basement. He then proceeded to crawl up the chute to get out of the bin. He testified that he got his body out, but that before he had a chance to swing his legs out, the grate fell down and landed on his feet. In the course of his hospitalization, it was necessary to amputate his left leg.

The plaintiff's case then is based on the theory that the condition of the defendant's premises was such that the only practical method of delivering coal was to place the grate in a precarious vertical position and that the resulting injury was proximately caused by this condition. There were no hooks or devices to fasten the grate to the wall in this position and it is charged that the defendant provided no one to help him handle or replace the grate. The plaintiff explained that the grate was not removed completely and put to one side out of the way because of the procedure followed by the coal company in leaving only one man at the premises to replace the grill. Other coal hikers testified to the practice of placing the grate in a vertical position. It was established that the dimensions of the grate were smaller than the pit open-

97

ing and that if the grate were removed completely, it would be more difficult to get the flanges back into the grooves and into the horizontal position. There is a difference of opinion as to whether one man could manipulate the grill back into its horizontal position after removing it completely from its grooves.

■■ "The rule of law to be applied in determining whether a trial court should have directed a verdict for the defendant is clear. A motion for a directed verdict should be allowed if, when all evidence is considered, with all reasonable inferences to be drawn therefrom in its aspects most favorable to the party against whom the motion is directed, there is a total failure to prove one or more essential elements in the case. (citing cases) This court, as a reviewing court, considers only the narrow question, whether there is any evidence, together with all reasonable inferences to be drawn therefrom, which would justify submission of the case to the jury." Friesland v. City of Litchfield, 24 Ill.App.2d 390, 395, 164 N.E.2d 606.

■ The narrow question before us then is whether the plaintiff's evidence, with all the reasonable inferences therefrom, would justify submission of the case to the jury. We are of the opinion that it does not.

It is important to distinguish at the outset the relation between the condition of the premises and the manner of executing the delivery of the coal on the premises. The defendant had no control over the method employed in delivering the coal; whether to use two men or one; whether to remove the grill completely or keep it on the grooves but securely fastened to the building. She ordered the coal delivered in her coal bin and had the right to expect that it would be delivered in a competent, workmanlike manner. It is a well known fact that a considerable part of the price of coal is the labor cost, and she was paying for this service.

The fact that all the other coal hikers who testified as to the method employed in removing the grill, placed the grill in the same precarious position, does not alter the fact that it was not a safe position. The plaintiff himself recognized this. The truck driver placed the board against the grill to secure it, but even then, the plaintiff was not confident that the grill would not fall. Assuming, as we must, that the plaintiff did not bump the board in the process of climbing out of the chute, it is highly doubtful whether such a hazardous procedure in leaving the grill in an almost vertical position could be considered in accordance with the standards of a reasonably competent workman.

The method employed by the plaintiff was not necessitated by the conditions of the premises. We are not required to speculate as to whether a hook on the wall would have secured the grill or whether the grill would have been placed differently if the defendant had provided a janitor to help the coal driver and the plaintiff in removing the grill. It is clear that the vertical position was not at all safe and that there were other practical ways of removing the grill to deliver the coal. The defendant did not have a duty to provide help in the delivery of the coal and if it was not practicable for one man to replace the grill, the coal company should have considered this in the course of fulfilling its obligations to the defendant.

The grill itself was not a hazard to persons on the premises. It had a definite function to serve as a part of the walkway and was designed for that purpose. The question as to how it should be removed and secured were matters that rested entirely under the control of the coal deliverymen. They chose to leave it in a precarious vertical position, supported only by the board supplied by his driver. It is unnecessary to decide whether this constituted contributory negligence

as a matter of law, since it is clear from the foregoing that the plaintiff has not made out a case of negligence against the defendant and that the trial judge properly directed a verdict against the plaintiff.

Among the various cases cited by the defendant, the case of Reynolds v. King, 74 Misc. Rep. 439, 132 N.Y.S. 273, bears the closest similarity in the facts. In that case, the court directed a verdict in favor of a landlord who was deemed not responsible for the manner in which a tenant secured the two iron doors leading to the cellar of the premises, which resulted in an injury to a pedestrian. The plaintiff there argued that the landlord was chargeable with the maintenance of a nuisance in failing to provide a device which would have held the doors securely in position when open. The court said: "I do not think the contention sound. There was nothing the matter with the doors, so long as they remained closed. When and how they should be opened, and whether, when opened, they should be left upright, or laid back flat, and, if upright, how they should be guarded, were matters entirely within the control of the tenant. In the present case, he chose to leave them standing upright and insecurely fastened, and the injury is chargeable solely to his negligence." 132 N.Y.S. 273, 274.

The defendant was not responsible for the dangerous condition. Judgment for the defendant is affirmed.

Judgment affirmed.

BURKE, P. J. and FRIEND, J., concur.